IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-210-FL

| | |
|---|---|
| SABRINA M. HOLLIDAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Sabrina M. Holliday ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings (D.E. 18, 20), which have been fully briefed (*see* D.E. 19, 21). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 10 June 2015). For the reasons set forth below, it will be recommended that plaintiff's motion be denied, the Commissioner's motion be allowed, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 10 March 2011 and an application for SSI on 14 March 2011, both alleging a disability onset date of 18 May 2010. Transcript of Proceedings ("Tr.") 17. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 17. On 8 May 2013, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a vocational expert ("VE") testified. Tr. 17, 32-58. The ALJ issued a decision denying plaintiff's claim on 18 July 2013. Tr. 17-31. Plaintiff timely requested review by the Appeals Council. Tr. 12-13. On 27 August 2014, it admitted additional evidence into the record (D.E. 602-12), but denied plaintiff's request for review. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 27 September 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see id.* § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see id.* § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.* §§ 404.1523, 416.923.

C.   **Findings of the ALJ**

Plaintiff was 42 years old on the alleged onset date of disability and 45 years old on the date of the hearing. *See* Tr. 29 ¶ 7. Plaintiff has at least a high school education.[2] Tr. 29 ¶ 8. She has past relevant work as an inventory clerk, team leader, outdoor laborer, daycare worker, and supervisor/construction laborer. Tr. 29 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 19 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: right knee degenerative joint disease, obesity, post-traumatic stress disorder ("PTSD"), bipolar disorder, personality disorder, and attention deficit hyperactivity disorder. Tr. 19 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 20 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), including pushing and pulling 20 pounds occasionally

---

[2] Plaintiff testified that she completed high school and some college, but did not earn a degree or certificate for her college work. Tr. 36.

and 10 pounds frequently,[3] subject to various limitations. Tr. 18 ¶ 5. The limitations are as follows:

> She can occasionally climb ramps and stairs, kneel and crouch, but never climb ladders, ropes or scaffolds, balance for safety on dangerous surfaces or crawl. The claimant cannot work around hazards such as unprotected heights or dangerous moving machinery. She can understand, remember and carry out simple, routine and repetitive tasks for 2 hours at a time; adapt to changes in a routine work setting; occasionally interact with coworkers, supervisors and the public; and perform production demands that are limited to having assigned tasks to complete by the end of a work day or shift.

Tr. 22 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work because the requirements of these jobs exceed plaintiff's RFC. Tr. 29 ¶ 6. At step five, the ALJ accepted the testimony of the VE and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the unskilled occupations of records processor, retail marker, and mail sorter. Tr. 29-30 ¶ 10. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date, 18 May 2010, through the date of her decision, 18 July 2013. Tr. 30 ¶ 11.

---

[3] "Light work" is defined under the Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 28 Dec. 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent

evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ erred in improperly assessing medical source opinion evidence and relying on testimony from the VE based on an incomplete hypothetical. Each ground is addressed in turn below.

### IV. ALJ'S EVALUATION OF MEDICAL SOURCE OPINION EVIDENCE

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of one of her treating psychiatrists, Kisha James, M.D., and one of her treating counselors, Melody Granger, L.P.C., both of the North Carolina Solutions clinic. The court finds no error.

#### A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the

7
Case 7:14-cv-00210-FL   Document 23   Filed 12/28/15   Page 7 of 18

claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(b), 416.927(b); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant."). The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590.

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the opinion of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to

the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (partial listing of "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See id.* at *3.

B.  Analysis

Dr. James saw plaintiff three times between February and June 2013. *See* Tr. 594-97; 610-12. By a letter dated 22 May 2013, addressed "To Whom It May Concern," Dr. James provided her assessment of plaintiff. Tr. 601. After noting plaintiff's ongoing treatment and her diagnosis of Bipolar 1, Severe, Dr. James stated:

> Sabrina is fully involved in all individual therapy sessions as she continues to develop and implement positive coping skills to manage both her manic and depressive episodes which have [a] significant impact on her ability to function. Sabrina completed group therapy and began individual therapy in January 2013 in order to address some of her issues with more intensity. *As stated in previous correspondence*, her mania directly [a]ffects her anxiety and depression and her ability to complete basic life tasks.
>
> It is my personal recommendation that Sabrina is unable to work at this time and does not have any income to report. These factors make it extremely difficult for Sabrina to make child support payments at this time.

Tr. 601 (emphasis added).

The prior correspondence to which Dr. James alludes apparently includes two letters by Ms. Granger dated 6 September 2011 (Tr. 489) and 28 February 2012 (Tr. 488), worded much like Dr. James' letter and expressing essentially the same opinions regarding the effects of mania and depression on plaintiff, and her inability to work and make child support payments.

The ALJ gave the opinions expressed in these letters "little weight" for four principal reasons:

10
Case 7:14-cv-00210-FL   Document 23   Filed 12/28/15   Page 10 of 18

[1] First, the regulations reserve the issue of disability for the Commissioner. [2] Moreover, these letters appear to be written for child support purposes, as they address the claimant's inability to work in [the] context of her inability to make child support payments. [3] Additionally, the medical evidence of record, including treatment notes from North Carolina Solutions, does not support these opinions. For example, in treatment notes dated January 2010 through February 2013, the examiners at North Carolina Solutions noted that while the claimant demonstrated pressured/rapid speech and anxiousness, the claimant's mental status examinations were otherwise essentially normal. In fact, the examiners at North Carolina Solutions routinely noted the claimant demonstrated normal attention/concentration. While they noted the claimant reported suicidal ideations on a few occasions, the examiners indicated the claimant was not an immediate threat to herself and that the claimant was able to deflect her ideations with no plan or intent. (Exhibits 16F, 20F and 21F). Likewise, as noted previously, the claimant reported she was doing very well overall in September 2012, and she rated her mood as an 8/10. In March 2013 treatment notes, Dr. James noted the claimant reported an improved mood with no active suicidal ideations, and Dr. James documented that the claimant's mental status examination was normal. (Exhibit 21F). Accordingly, because these opinions are inconsistent with the findings reported in their treatment notes and [4] the relatively normal findings of [psychiatrist Morton Meltzer, M.D.'s 9 July 2011 consultative] examination, the undersigned has given them little weight.

Tr. 27 ¶ 5.[4]

The first reason is obviously responsive to the opinion in the correspondence that plaintiff is disabled and is an accurate statement of the law, as the prior review of legal authorities indicates. Similarly, the second reason is grounded factually in the reference in the letters to plaintiff's purported inability to make child support payments. The child-support orientation of the letters is a proper consideration because it suggests an advocative purpose behind the correspondence and the standards governing ability to pay child support are not necessarily the same as those governing disability under the Regulations. The third reason, the inconsistency of

---

[4] Although not addressed by the ALJ, attribution of controlling weight to the opinions of Ms. Granger as set out in her letters is arguably precluded by law. Licensed professional counselors are not acceptable medical sources to whose opinions controlling weight may be given. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (definition of acceptable sources); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2 ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in [the Regulations], whose medical opinions may be entitled to controlling weight."). While Dr. James could be deemed to have adopted these opinions, he was not treating plaintiff at the time. Controlling weight can only be given to the opinions of treating sources. *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 ("[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'").

the opinions with treatment notes from North Carolina Solutions, is also a factor properly considered by the ALJ and supported by substantial evidence, including the evidence she cites.

The same is true of the fourth reason, inconsistency of the opinions with the assessment by Dr. Meltzer (Tr. 463-66). The ALJ described Dr. Meltzer's assessment as follows:

> Upon psychological evaluation in July 2011, consultative examiner, Morton Meltzer, M.D., documented that the claimant reported suicidal thoughts, flashbacks relating to the loss of her home in a 1999 flood, and depressive symptoms. However, the claimant reported less suicidal thoughts and increased energy since starting Pristiq medication. She also reported she had a fiancé at that time and cared for her mentally challenged daughter on a daily basis. Dr. Meltzer noted the claimant's mental status examination was essentially unremarkable, as the claimant exhibited alertness, full orientation in all spheres, normal attention/concentration, an appropriate affect, no overt paranoia, no evidence of homicidal ideations, no evidence of psychosis, and no overt hallucinations, delusions or flight of ideations. Dr. Meltzer noted the claimant demonstrated average intellect and that while she exhibited variable concentration, she could remember 7 numbers in a forward sequence and 3 in reverse, recall 3 items after a 15–minute delay, perform simple multiplication problems, and perform serial 3 subtractions to 88. Dr. Meltzer assessed the claimant with PTSD and mood disorder. He assigned the claimant a GAF [*i.e.*, global assessment of functioning[5]] score of 55, which represents moderate symptoms or limitations in social and/or occupational functioning. Because it is consistent with his objective findings, this GAF score has been given great weight. (Exhibit 10F).

Tr. 24-25 ¶ 5.

Plaintiff contends that the ALJ erred, in part, on the grounds that Dr. Meltzer's evaluation of plaintiff is not inconsistent with that of Dr. James and Ms. Granger. Plaintiff refers specifically to the opinion by Dr. Meltzer that "[t]olerating the stress and pressures associated with day-to-day work, right at the mo[m]ent due to the feeling she is having about her own situation, this may be difficult for her." Tr. 465. The ALJ, though, made clear that she did not consider this potential limitation or any others disabling, which obviously is inconsistent with Dr. James' and Ms. Granger's assessments. The ALJ stated:

---

[5] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).

> In July 2011, Dr. Meltzer opined the claimant is able to understand, retain and follow instructions, and sustain attention to perform simple, repetitive tasks. He stated that relating to others, including fellow workers and supervisors, under the proper circumstances was not a problem for the claimant but that the claimant may have difficulty tolerating the stress and pressures associated with daily work activity. (Exhibit 10F). Because they are consistent with his findings upon examination and are supported by his expertise in the field of psychology, the undersigned has given weight to Dr. Meltzer's statements and GAF score in limiting the claimant to simple, routine, repetitive tasks. She has further considered his opinion that the claimant may have difficulty tolerating the stress and pressures associated with daily work activity by limiting the claimant to a low production setting consisting of having assigned tasks to complete by the end of the workday or shift in order to reduce the claimant's stress. Although Dr. Meltzer did not impose any social limitations, the undersigned has also limited the claimant's interactions with others based on her reports to Dr. Meltzer that she has difficulty being in crowds.

Tr. 27 ¶ 5.

Plaintiff also points to the episodic nature of bipolar disorder and argues that the ALJ cherry picked evidence from occasions on which plaintiff was doing relatively well in making her analysis. The contention has no merit. In her decision, the ALJ sets out a comprehensive review of the medical evidence, testimony by plaintiff, and other evidence relating to both plaintiff's mental and physical impairments which manifestly includes evidence tending to substantiate plaintiff's alleged limitations. *See* Tr. 22-29 ¶ 5. Plaintiff's argument amounts to a request that the court reweigh the evidence. It, of course, may not properly do so.

The court concludes that the ALJ's determination not to give controlling weight to the opinions of Dr. James and Ms. Granger is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

V.   **ALJ'S HYPOTHETICAL TO THE VE**

Plaintiff contends that the ALJ erred in relying on the VE's testimony in finding that there were jobs in significant numbers in the national economy that plaintiff could perform because the hypothetical eliciting such testimony did not include a limitation that the

hypothetical individual would be absent from work on a regular basis as a result of mental impairments. The court finds no error.

A hypothetical question to a VE is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The ALJ's hypothetical here adequately tracks her RFC determination.

The ALJ asked the VE to

> assume that you have a hypothetical individual of the claimant's age, education, and past work experience, who can perform the demands of light work as defined in the regulations in the [DOT], with pushing and pulling 20 pounds occasionally and 10 pounds frequently. The individual has no limits on stooping, but can occasionally climb ramps and stairs, kneel, crouch, but never climb ladders, ropes, or scaffolds, balance for safety on dangerous surfaces or crawl. The individual should avoid hazards, such as unprotected heights, and dangerous moving machinery. Further assume the following mental limitations. The individual can understand, remember, and carry out short, simple, routine, repetitive tasks for two hours at a time, adapt to changes in a routine work setting, occasionally interact with coworkers, supervisors, and the public, and perform production demands, which are limited to having assigned tasks to complete by the end of a work day or shift.

Tr. 54.[6] The ALJ added the restriction that the individual "needed a sit/stand option at their work station every 30 minutes to one hour." Tr. 55. With this additional restriction, the hypothetical included all the limitations in the ALJ's RFC determination. *See* Tr. 22 ¶ 5. It was in response to this hypothetical that the VE identified the three unskilled occupations—records processor, retail marker, and mail sorter—forming the basis of the ALJ's determination that there were jobs in the national economy in significant numbers that plaintiff could perform. *See* Tr. 29-30 ¶ 10; 54-55.

Plaintiff argues that the record shows that plaintiff would have at least one absence a month due to her mental impairments and that this limitation should therefore have been

---

[6] Seemingly reiterating the limitation to short, simple, routine, and repetitive tasks, the ALJ asked the VE specifically to identify unskilled jobs. Tr. 54.

included in the hypothetical. The evidence to which she cites includes the opinions of Dr. James and Ms. Granger. As previously discussed, though, the ALJ did not err in discounting those opinions.

Other evidence plaintiff cites includes notes on three office visits to North Carolina Solutions: a 9 March 2011 visit at which she was found to be irritable and agitated (Tr. 499); a visit over a year later, on 20 April 2012, at which she reported crying spells and loss of interest in everything (Tr. 564); and a visit (with Dr. James) almost another year later, on 6 February 2013, at which she reported that she had been manic for a month, but also that she had been off her medication for one and half weeks (*see* Tr. 596). This evidence considered separately or with the remainder of the record simply does not compel the conclusion that plaintiff would be absent from work at least once a month.

Plaintiff relies perhaps most heavily on her testimony at the hearing that she would miss two to three days of work a month because of anxiety and depression. Tr. 46-47. The ALJ found plaintiff's testimony not fully credible. Tr. 26 ¶ 5. Plaintiff does not directly challenge this determination. The court finds that it was proper.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out factors in addition to objective

medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the finding at the first step that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 26 ¶ 5. At step two, however, she found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," citing the reasons explained at length in the decision. Tr. 26 ¶ 5. Those reasons, which include her discounting of the opinions of Dr. James and Ms. Granger, are supported by substantial evidence.

Plaintiff argues that had the ALJ included a limitation of absence from work for even one day a month the VE's testimony establishes that she would have been disabled. Plaintiff states: "[A]s explained by the VE, given the restrictive light RFC provided by the ALJ, in order for Holliday to be considered disabled, she would only need to be absent one day a month from her job. (Tr 57)." (Pl.'s Mem. 22). This statement is simply wrong. In response to the ALJ's inquiry as to how many absences would be tolerated each month, the VE testified:

> I would state at the unskilled level, for the first year, if unscheduled absenteeisms *exceeded* one time per month, such an individual would have difficulty maintaining employment.

Tr. 57 (emphasis added). Thus, the VE stated that only if there was more than one absence a month would the individual's employment be implicated and then the employment would be

difficult to maintain, not precluded. It was only if the individual was absent two to three days a month that the VE testified employment would be precluded. Tr. 56-57.

The court concludes that the hypothetical upon which the ALJ relied was proper. The court accordingly rejects plaintiff's challenge to it.

## VI. CONCLUSION

After careful consideration of the Commissioner's final decision, the other portions of the record in this case (as supplemented), and the applicable law, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that plaintiff's motion (D.E. 18) for judgment on the pleadings be DENIED, the Commissioner's motion (D.E. 20) for judgment on the pleadings be ALLOWED, and the Commissioner's final decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 14 January 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

**above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of objections.

This 28th day of December 2015.

_____
James E. Gates
United States Magistrate Judge